647 S.E.2d 711

Nancy K. HUDKINS, Petitioner
Below, Appellee,

v.

STATE OF WEST VIRGINIA CONSOLI-
DATED   PUBLIC   RETIREMENT
BOARD, Respondent Below, Appellant.

No. 33245.

Supreme Court of Appeals of
West Virginia.

Submitted: May 9, 2007.

Decided: June 13, 2007.

Fred F. Holroyd, Esq., Holroyd & Yost, Charleston, for Appellee.

Erica M. Mani, Esq., Bowles Rice McDavid Graff & Love, Charleston, for Appellant.

PER CURIAM.

The West Virginia Consolidated Public Retirement Board ("Board")[1] appeals a circuit court order which reversed the Board's administrative decision denying appellee Nancy K. Hudkins' right to convert unused sick leave to retirement service credit for purposes of calculating her pension benefits. For the reasons discussed in this decision, we affirm the circuit court.

## I.

Nancy K. Hudkins was a member of the Public Employees Retirement System ("PERS") by virtue of her employment with the West Virginia Department of Health and Human Resources ("Department"). Ms. Hudkins had worked for the Department for twenty-seven years and 217 days and had accumulated 1,752.2 hours of sick leave before she decided to separate from her employment on March 31, 2000. At the time of her separation from employment she was not yet fifty-five years of age and therefore was not eligible for immediate retirement benefits under PERS.

In March of 2000, before deciding to separate from her employment, Ms. Hudkins undertook to determine if she could convert her unused sick leave to service credit which, if the conversion were allowed, would increase her retirement income when she reached retirement age[2] on April 1, 2004. As a part of Ms. Hudkins' inquiry she contacted the Board to confirm her right to convert her accumulated sick leave to service credit. An employee of the Board assured Ms. Hudkins that she could freeze her sick leave and use it on April 1, 2004, as additional service credit when she filed for retirement benefits. In addition to the assurance given to Ms. Hudkins by the Board employee, she was also given written assurance by the community services manager for the Department that

---

1. The Board is a public body established pursuant to *W.Va.Code*, 5–10D–1, *et seq.* (2007) and serves as the statutory administrator of the West Virginia Public Employees Retirement System ("PERS").

2. Retirement age under the Public Employees Retirement System is fifty-five years. *See W.Va. Code*, 5–10–21(2005).

she could freeze her unused sick leave and use the accumulated 1,752.2 hours to extend her service credit upon applying for retirement.[3]

On March 31, 2000, based upon the assurances given her by the Board and the Department community service manager that she could convert her unused sick leave to service credit upon her planned retirement, Ms. Hudkins resigned from her employment with the Department.

In September 2002, more than two years following separation from her employment, Ms. Hudkins learned for the first time that she might not be permitted to convert her unused sick leave to service credit.[4] In an attempt to determine the accuracy of what she had been told, Ms. Hudkins contacted the Board in writing[5] and inquired about the Board's "sick leave to service credit" policy. In her inquiry she also indicated that she wanted to "appeal" any decision not to honor her original understanding of the policy. By correspondence dated October 4, 2002, the Board advised Ms. Hudkins that only employees who actually retire and begin drawing retirement benefits at the time of their termination of employment could convert unused sick leave to service credit, and that unused sick leave could not be converted to service credit by employees who terminated their employment before they become eligible for retirement benefits.[6]

In January 2003, prior to the date of her retirement eligibility, Ms. Hudkins initiated

3. Ms. Hudkins was given a letter from John Najmulski, Community Service Manager, Department of Health and Human Resources, dated March 28, 2000, which states:

TO WHOM IT MAY CONCERN:

Nancy K. Hudkins resigned from Department of Health and Human Resources effective March 31, 2000. This was her last working day and last day on payroll. She was paid a lump sum for her 358.5 hours annual leave. Her 1752.2 hours sick leave were frozen to use for extended service credit upon applying for retirement.

Should additional information, please do not hesitate to contact me.

Sincerely,
John J. Najmulski, MSW
Community Service Manager

4. Sometime during the period after Ms. Hudkins had terminated her employment and September 2002, the Board learned of a pre-existing West Virginia Division of Personnel regulation, which provided that if an employee separates from his or her employment for any reason other than retirement, then all unused sick leave is cancelled.

5. The exasperation of Ms. Hudkins is demonstrated in her September 13, 2002, letter to the Board:

September 13, 2002
Attn: Michael Adkins
State of West Virginia
Consolidated Public Retirement Board
Building 5, Room 1000
Charleston, WV 25305
Dear Mr. Adkins:

My name is Nancy Karleen Hudkins. I worked for the Department of Health and Human Resources for 27 years and 217 days. I resigned from my job 03–31–00. Prior to resigning I spoke to Jo Ann Edwards and was advised I could freeze my 1752.2 hours of sick leave and use it for extended service credit upon applying for retirement in 2004. Upon hearing this, I decided I would resign 03–31–00, freeze my time and sick leave and was paid a lump sum for my vacation and comp time.

Yesterday I was informed this promise was not going to be honored by the Department of Personnel. I am very angry and disappointed as I was told I could use my sick leave for extended time and in good faith, believing I could trust the establishment that I worked for for so many years, I resigned. Since I have already resigned approximately 2½ years ago, I do not have the option of thinking it over.

I want to appeal the Department of Personnel's decision not to honor information I was given regarding my sick leave hours that were frozen to use for extended service credit upon applying for my retirement in 2004.

Sincerely,
Nancy Karleen Hudkins

6. The October 4, 2002 letter received by Ms. Hudkins states, in part, as follows:

The provision that does not allow for the "banking" of sick leave upon leaving employment with the State of West Virginia is not a new provision. It is my understanding that the rule regarding this matter have been effective for more that fourteen (14) years.

West Virginia Administrative Rule, Division of Personnel, Section 14.4(e)(2) states:

"2. *All Other Separations—All accumulated sick leave shall be cancelled as of the date of separation....*"

The only exception to the above rule is when the State of West Virginia employee leave activity employment and enters immediately into retirement....

Sincerely,
J. Michael Adkins
Interim Co–Executive Director

administrative proceedings seeking to secure the right to convert her unused sick leave to service credit—as she had been assured prior to her decision to separate from her employment.

On April 16, 2003, a hearing was conducted before a Board hearing officer. Subsequent to the hearing, the hearing officer recommended to the Board that Ms. Hudkins' appeal be denied. On May 28, 2003, the Board adopted the recommended decision and denied her appeal.

In June 2003, Ms. Hudkins appealed the decision of the Board to the circuit court of Kanawha County under the judicial review provisions of the West Virginia Administrative Procedures Act.[7] The circuit court, after a hearing, reversed the decision of the Board.[8]

It is from the circuit court decision reversing the Board that the appellant appeals.

## II.

Review of appeals from circuit court orders in administrative appeals is governed by *W.Va.Code*, 29A–6–1 (1964), which provides as follows:

> Any party adversely affected by the final judgment of the circuit court under this chapter may seek review thereof by appeal to the supreme court of appeals of this state, and jurisdiction is hereby conferred upon such court to hear and entertain such appeals upon application made therefor in the manner and within the time provided by law for civil appeals generally.

■ The standard of review by this Court of an appeal of an administrative case from the circuit court is found in Syllabus Points 1 and 2 respectively of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). We held in Syllabus Point 1 that:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.

Code, 29A–5–4[g] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

*W.Va.Code*, 29A–5–4(g) and (h) (1998) provide as follows:

> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> (h) The judgment of the circuit court shall be final unless reversed, vacated or modified on appeal to the supreme court of appeals of this state in accordance with the provisions of section one [§ 29A–6–1], article six of this chapter.

■ Syllabus Point 2 of *Muscatell, supra,* further provides:

> In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

Inasmuch as the instant case presents a legal issue relating to the application of equi-

---

7. *See W.Va.Code,* 29A–5–4 (1998).

8. The circuit court order, as a basis for its decision, states, in part, as follows:

> Although generally, estoppel does not apply against a governmental agency in carrying out

its statutory duties, there are exceptions. In this particular case, this Court finds estoppel does apply. To deny estoppel in this case would permit *manifest injustice.*

(Emphasis added.)

table estoppel, we find the issue appropriate for *de novo* review under *W.Va.Code*, 29A–5–4(g) (1998).

With these standards in mind we proceed with our analysis.

In this case we address a state employee's attempt to convert unused sick leave to extend service credit for the purpose of calculating retirement benefits. The statutory authority for an employee using unused sick leave to extend his or her service credit is found in *W.Va.Code*, 5–10–15a (1988), which states:

> Any member accruing annual leave or sick leave days may, after the effective date of this section [June 27, 1988], elect to use such days at the time of retirement to acquire additional credited service in this retirement system. Such days shall be applied on the basis of two workdays credit granted for each one day of such accrued annual or sick leave days, with each month of retirement service credit to equal twenty workdays and with any remainder of ten workdays or more to constitute a full month of additional credit and any remainder of less than ten workdays to be dropped and not used, notwithstanding any provisions of the code to the contrary, including section twelve [§ 5–16–12], article sixteen of this chapter. Such credited service shall be allowed and not deemed to controvert the requirement of no more than twelve months credited service in any year's period.

Prior to Ms. Hudkins' separation from employment and before the passage of *W.Va. Code*, 5–10–15a (1988), the West Virginia Department of Personnel had a provision in its rules which stated that "Separation from Employment—All accumulated sick leave shall be cancelled as of the effective date of separation of employment or last day worked during the notice period." WVSCR 143–1–16.04(e)(1) (1981).[9] After the passage of *W.Va.Code*, 5–10–15a (1988), this particular

language of the personnel regulations continued to be included in the West Virginia Department of Personnel rules and remained substantially the same as the version predating passage of *W.Va.Code*, 5–10–15a (1988).

In 2002, over two years after Ms. Hudkins' decision to separate from her employment, the West Virginia Consolidated Retirement Board, for the first time, promulgated rules relating to service credit for unused sick leave. The rules and the timing of their adoption appear to be the result of the Board discovering the existence of the "cancellation" provision in the Division of Personnel rules. The new Board Rules read, in part, as follows:

> Service Credit for Accrued Unused Sick and Annual Leave.—Members of the Public Employees Retirement System may elect to receive additional service credit in exchange for accrued and unused sick and annual leave at the time of retirement. Members who make this election are eligible for any additional service credit to which the member is entitled based upon the number of member's accrued unused sick and annual leave days which stand to the member's credit with the member's last participating public employer at the time of retirement....

WVCSR, 162–8–4.1 (2002). These "service credit" rules were amended in 2006, but the quoted language remained unchanged. *See* WVCSR, 162–8–4.1 (2006).

The history of legislative and regulatory action that is relevant to the instant case suggests that upon the 1988 passage of *W.Va.Code*, 5–10–15a, the Board allowed employees to extend service credit for unused sick leave, regardless of whether the employee terminated his or her employment to immediately draw retirement benefits, or, as in the case of Ms. Hudkins, separated from employment before being eligible to draw retirement. This was confirmed at oral ar-

---

9. The 1981 language in this personnel regulation was subsequently modified in 1987 and again in 1993. The language of the 1993 version was carried into later versions of the regulations and was the operative language of the regulation when Ms. Hudkins separated from her employment in March 2000, and retired on April 1,

2004, when she began receiving her retirement benefits. The 1993 operative language is as follows: "All Other Separations—All accumulated sick leave shall be cancelled as of the effective date of separation." WVSCR 143–1–15.04(e)(2) (1993).

gument by counsel for the appellant. Appellant's counsel also indicated that a Board investigation is underway to determine how many other former employees, similarly situated to Ms. Hudkins, currently receive the benefit of extended service credit for unused sick leave.

We believe that this case can be decided upon principles of equitable estoppel. The appellant, however, argues that the application of the doctrine of equitable estoppel should not be applied.

■ In Syllabus Point 7 of *Samsell v. State Line Development Company*, 154 W.Va. 48, 174 S.E.2d 318 (1970) this Court acknowledged that the doctrine of estoppel may be applied against the State, but held that:

> The doctrine of estoppel should be applied cautiously, only when equity clearly requires that it be done, and this principle is applied with especial force when one undertakes to assert the doctrine against the state.

The general rule prohibiting the application of the doctrine is not without exceptions. This Court in its prior decisions never intended to preclude the application of equitable estoppel against the State in every case. We therefore agree with the trial court's acknowledgment that the general rule that equitable estoppel does not apply against a governmental agency is not without exceptions.

The trial court's findings are supported by 28 Am.Jur.2d *Estoppel and Waiver* § 140 which states as follows:

### § 140. What must be shown to estop government.

> In recognition of the heavy burden bourne by one seeking to estop the government, courts have held that the doctrine of estoppel may be raised against the government only if, in addition to the traditional elements of estoppel, the party raising the estoppel proves affirmative misconduct or wrongful conduct by the government or a government agent. Likewise, courts have held an estoppel against the government may be raised only when -

> — the injury to the public interest if the government is estopped is out weighed by the injury to the plaintiff's personal interest or the injustice that would arise if the government is not estopped.

> — raising the estoppel prevents manifest or grave injustice.

> — raising the estoppel will not defeat a strong public interest or the operation of public policy.

> — the exercise of government functions is not impaired or interfered with.

> — circumstances make it highly inequitable or oppressive not to estop the government.

> — the government's conduct works a serious injury and the public's interest will not be harmed by the imposition of estoppel.

*See also, Wisconsin Department of Revenue v. Moebius Printing Company*, 89 Wis.2d 610, 279 N.W.2d 213 (1979) (taxpayer was entitled to claim the benefit of estoppel based upon tax representative's incorrect advice).

That estoppel may operate against a state government with regard to unused sick leave is supported by *Crum v. Stalnaker*, 936 P.2d 1254 (Alaska 1997). In *Crum*, a retired teacher was denied his claim for unused sick leave credit in the Teacher's Retirement System after twenty-one years of teaching. The teacher had accumulated 183 days of unused sick leave credit, equivalent to about one year of service. The estimated value of the loss of the sick leave credit was more than $100.00 per month in retirement benefits. The evidence showed that the retirement system had failed to provide the teacher with the proper form with which to claim credit for his unused sick leave. As a result the teacher was denied his claim.

On appeal the Alaska court stated in *Crum* that:

> ... [E]stoppel may apply against the government and in favor of a private party if four elements are present: (1) the government body asserts a position by conduct or words; (2) the private party acts in reasonable reliance thereon; (3) the private party suffers resulting prejudice; and (4) the estoppel serves the interest of justice so as

to limit public injury. *Wassink v. Hawkins,* 763 P.2d 971, 975 (Alaska 1988). *Crum,* 936 P.2d at 1256. In *Crum* the Alaska Supreme Court held that the four elements of *Wassink* were satisfied.

■ This Court held in Syllabus Point 6 of *Stuart v. Lake Washington Realty Corp.,* 141 W.Va. 627, 92 S.E.2d 891 (1956) that in disputes between private parties:

> The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

■ After a complete review of the record in this case, we are compelled to conclude that the elements of equitable estoppel have been met by Ms. Hudkins. It is not disputed that a Board employee made the representation that Ms. Hudkins was eligible to claim service credit for her unused sick leave given her years of service and age. Furthermore, as disclosed in oral argument, the Board has had a long history of extending service credit for unused sick leave without regard to whether or not the employee was separating from employment to immediately draw retirement benefits. The Board employee who advised Ms. Hudkins clearly had in her possession all of the facts necessary to correctly advise Ms. Hudkins as to her entitlement to convert her unused sick leave. We are also satisfied that the representations by the Board employee were made with the intention that Ms. Hudkins would act upon those representations, and that Ms. Hudkins did, in fact, act in reliance upon the representations of the Board employee.

Furthermore, it is also uncontroverted that Ms. Hudkins would not have separated from her employment with the Department but for the representations made by the Board employee and the representations made by Mr. Najmulski, the community service manager for the Department in which Ms. Hudkins was employed, that Ms. Hudkins could convert her unused sick leave to extended service credit for purposes of calculating her retirement benefits. That Ms. Hudkins relied upon these representations to her prejudice is clearly expressed in her September 13, 2002 letter to the Board when she stated, "Since I have already resigned approximately 2½ years ago, I do not have the option of thinking it over." Her reliance upon those representations is uncontroverted.

We also note that the Board employee upon whom Ms. Hudkins relied before her separation from employment was simply doing that which had apparently become a common practice of the Board, namely, allowing employees who separate from their employment to "freeze" their unused sick leave. Furthermore, we note that since the Board had not even addressed in their rules the matter of the unused sick leave credits until 2002—more than two years following Ms. Hudkins' separation from her employment, Ms. Hudkins could not have been aware of the methodology used by the Board even if she had thoroughly examined the Board's rules. Finally, we observe that the Board's staff was dedicated to the business of advising employees concerning retirement benefits. This is an activity that the Board undertakes everyday. We believe that Ms. Hudkins had every right to rely upon the advice of the Board representative regarding her right to "freeze" her unused sick leave for purposes of calculating her retirement benefits. This is especially true since the Board had apparently established the practice of giving the same advice to other employees both before and after Ms. Hudkins separated from her employment.

We believe the principles set forth in 28 Am.Jur.2d *Estoppel and Waiver* § 140 and in Syllabus Point 6 of *Stuart v. Lake Washington Realty Corp., supra,* and the cautious advice provided in Syllabus Point 7, *Samsell v. State Line Development Company, supra,* have been met. The record reflects that the financial impact of this decision is approximately $51.00 per month. Given the likelihood that Ms. Hudkins will be required to

live on a fixed income for the remainder of her life, we find that the injury and injustice to Ms. Hudkins outweighs the public interest by estopping the Board in this case. We therefore conclude that by permitting estoppel to operate in this case, we will prevent a manifest and grave injustice.

Finally, we do not believe that a strong public interest or operation of public policy will be defeated by this decision. By expressly limiting our decision to the specific facts of this case, we further find that the exercise of government functions will not be impaired or interfered with, nor will the public interest be harmed.

### III.

Based upon the foregoing, we affirm the decision of the circuit court.

Affirmed.