IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0937

_____

FILED

June 11, 2014
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA CONSOLIDATED PUBLIC
RETIREMENT BOARD,
Respondent Below, Petitioner

v.

BENNY JONES,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Raleigh County
The Honorable John L. Cummings, Judge
Civil Action No. 11-AA-8-B

REVERSED AND REMANDED

_____

Submitted: May 6, 2014
Filed: June 11, 2014

J. Jeaneen Legato, Esq.                    E. Kent Hellems, Esq.
West Virginia Consolidated Public          Hinton, West Virginia
Retirement Board                           Attorney for the Respondent
Charleston, West Virginia
Attorney for the Petitioner

The Opinion of the Court was delivered PER CURIAM.

JUSTICE KETCHUM dissents, and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. Tax Dep't.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

3.      "The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice." Syl. pt. 6, *Stuart v. Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956).

Per Curiam:

Petitioner West Virginia Consolidated Public Retirement Board ("the Retirement Board" or "the Board") appeals the July 22, 2013, order of the Circuit Court of Raleigh County that reversed the Board's final order and found that the Board is equitably estopped from denying to Respondent Benny Jones participation in the Public Employees Retirement System ("PERS"). For the reasons stated below, we find that the circuit court erred in estopping the Board from denying participation in PERS to Mr. Jones, and we reverse and remand.

## I. FACTS

The Raleigh County Emergency Services Authority ("the Authority") sought the services of a full-time attorney to handle the Authority's legal matters. The position was salaried and provided full benefits except for holiday and leave accrual. The base pay was $613.46 per two weeks for up to eight hours of service per month. For each additional hour billed over eight, the attorney would receive $125.00 which was later increased to $150.00. The attorney who filled this position was expected to be on call for the Authority twenty-four hours a day, seven days a week.

Respondent Benny Jones accepted this position and began employment with the Authority on January 1, 2002. Mr. Jones' work for the Authority comprised ten to fifteen percent of his law practice. He performed work for the Authority at the reduced hourly rate of $125.00 due, in part, to the Authority's representation that he would

1

receive retirement benefits. Mr. Jones billed work that he performed for clients other than the Authority at $250.00 an hour.

Following Mr. Jones' acceptance of employment with the Authority, he received a letter from the Retirement Board dated June 26, 2003, in which the Board informed him that because he had returned to the employment of an employer who participates in PERS, he was eligible to reinstate the refund of his previous contributions to the Board that he withdrew on or about May 17, 1984. The Board indicated that repaying that amount would allow the Board to reinstate Mr. Jones' former contributing service totaling one year and eight months. On or about July 8, 2003, Mr. Jones remitted the full repayment amount to reinstate his prior contributing service, and the Board acknowledged receipt of this repayment and reinstatement of Mr. Jones' prior contributing service by letter dated July 10, 2003.

Mr. Jones provided additional work for the Authority over the eight-hour monthly base for each year worked as follows: 2002 – 29.5 additional hours; 2003 – 22 additional hours; 2004 – 99.75 additional hours; 2005 – 104.5 additional hours; 2006 – 57.5 additional hours; 2007 – 104.25 additional hours; 2008 – 13.25 additional hours; 2009 – 58.75 additional hours; 2010 – 74.25 additional hours. The additional hours reported did not include the fact that Mr. Jones was on-call twenty-four hours a day, seven days a week.

On or about November 1, 2010, the Board notified Mr. Jones that he was ineligible to participate in PERS. The Board concluded that Mr. Jones had not worked the statutorily-required 1,040 hours a year necessary for participation in PERS as set forth in W. Va. Code § 5-10-2(11) and W. Va. C.S.R. § 162-5-2.3.

Mr. Jones appealed the Board's decision. In the hearing examiner's subsequent recommended decision, it determined that Mr. Jones is not eligible to be a member of PERS because his position with the Authority does not constitute "full time employment" pursuant to W. Va. C.S.R. § 162-5-2.3, which describes full time employment as "normally require[ing] twelve (12) months per year service and require[ing] at least one thousand forty (1,040) hours per year service in that position." The Retirement Board adopted the hearing examiner's recommended decision by final order dated July 6, 2011, and denied participation in PERS to Mr. Jones.

Mr. Jones then appealed to the Circuit Court of Raleigh County on the basis that the hearing examiner and the Retirement Board failed to consider the doctrine of equitable estoppel and this Court's decision in *Hudkins v. Public Retirement Board*, 220 W. Va. 275, 647 S.E.2d 711 (2007). In its July 22, 2013, order, the circuit court reversed the Board and held that the Board is equitably estopped from denying to Mr. Jones participation in PERS. The Board now appeals the circuit court's order.

## II. STANDARD OF REVIEW

3

The following standard of review applies generally to a case like the instant one which involves a circuit court's reversal of an administrative decision:

> In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*

Syl. pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). The circuit court based its decision below on its finding that equitable estoppel applies against the Retirement Board to estop the Board from finding that Mr. Jones is ineligible to participate in PERS. The application of equitable estoppel is a question of law which we review *de novo.* Also, the circuit court's finding of equitable estoppel is based in part on its construction of a statute and an administrative rule. This Court has held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. Tax Dep't.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). Having set forth the applicable standard of review, we will now address the issue in this case.

### III. DISCUSSION

The sole issue before us is whether the circuit erred in applying equitable estoppel to estop the Retirement Board from denying to Mr. Jones participation in PERS.

4

In finding that application of equitable estoppel applies in this case, the circuit court relied on this Court's per curiam decision in *Hudkins v. Public Retirement Bd.*, 220 W. Va. 275, 647 S.E.2d 711 (2007). In *Hudkins*, the petitioner, Ms. Hudkins, was a member of PERS as a result of her employment with the State Department of Health and Human Resources ("DHHR" or "the Department"). At the time of her separation from employment, Ms. Hudkins was not yet fifty-five years of age and therefore was not eligible for immediate retirement benefits under PERS. Prior to separating from her employment, Ms. Hudkins contacted the Retirement Board to confirm her right to convert her accumulated sick leave to service credit. An employee of the Board assured Ms. Hudkins that she could freeze her sick leave and use it as additional service credit when she filed for retirement benefits. In addition to the assurance given to Ms. Hudkins by the Board employee, she also was given written assurance by an employee at the DHHR that she could convert her accumulated sick leave to additional service credit.

More than two years following her separation from employment, the Board informed Ms. Hudkins that she could not convert her accumulated sick leave to service credit. As a result, Ms. Hudkins initiated administrative proceedings. After a hearing on the matter, the hearing examiner recommended that Ms. Hudkins' appeal be denied. The Board adopted the recommended decision and denied her appeal. The circuit court, on appeal of the Board's decision, found that the elements of equitable estoppel were met by Ms. Hudkins. The Board then appealed the circuit court's decision to this Court.

5

In *Hudkins*, this Court affirmed the circuit court's ruling after applying the elements of equitable estoppel in syllabus point 6 of *Stuart v. Realty Corp.*, 141 W. Va. 627, 92 S.E.2d 891 (1956), which says:

> The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

This Court reasoned in *Hudkins* as follows:

> After a complete review of the record in this case, we are compelled to conclude that the elements of equitable estoppel have been met by Ms. Hudkins. It is not disputed that a Board employee made the representation that Ms. Hudkins was eligible to claim service credit for her unused sick leave given her years of service and age. Furthermore, as disclosed in oral argument, the Board has had a long history of extending service credit for unused sick leave without regard to whether or not the employee was separating from employment to immediately draw retirement benefits. The Board employee who advised Ms. Hudkins clearly had in her possession all of the facts necessary to correctly advise Ms. Hudkins as to her entitlement to convert her unused sick leave. We are also satisfied that the representations by the Board employee were made with the intention that Ms. Hudkins would act upon those representations and that Ms. Hudkins did, in fact, act in reliance upon the representations, of the Board employee.
>
> Furthermore, it is also uncontroverted that Ms. Hudkins would not have separated from her employment with the Department but for the representations made by the Board

6

employee and the representations made by Mr. Najmulski, the community service manager for the Department in which Ms. Hudkins was employed, that Ms. Hudkins could convert her unused sick leave to extended service credit for purposes of calculating her retirement benefits. That Ms. Hudkins relied upon these representations to her prejudice is clearly expressed in her September 13, 2002 letter to the Board when she stated, "Since I have already resigned approximately 2 ½ years ago, I do not have the option of thinking it over." Her reliance upon those representations is uncontroverted.

We also note that the Board employee upon whom Ms. Hudkins relied before her separation from employment was simply doing that which had apparently become a common practice of the Board, namely, allowing employees who separate from their employment to "freeze" their unused sick leave. Furthermore, we note that since the Board had not even addressed in their rules the matter of the unused sick leave credits until 2002 – more than two years following Ms. Hudkins' separation from her employment, Ms. Hudkins could not have been aware of the methodology used by the Board even if she had thoroughly examined the Board's rules. Finally, we observe that the Board's staff was dedicated to the business of advising employees concerning retirement benefits. This is an activity that the Board undertakes everyday. We believe that Ms. Hudkins had every right to rely upon the advice of the Board representative regarding her right to "freeze" her unused sick leave for purposes of calculating her retirement benefits. This is especially true since the Board had apparently established the practice of giving the same advice to other employees both before and after Ms. Hudkins separated from her employment.

*Id.*, at 281, 647 S.E.2d at 717.

The circuit court in the present case, in its application of *Hudkins*, recognized a difference between the facts in *Hudkins* and the facts herein. Specifically, the court noted that the false representation in *Hudkins* was made by the Retirement

7

Board whereas the false representation in this case was made by the Authority, Mr. Jones' employer. However, the circuit court found that this difference is not of legal significance. According to the circuit court, W. Va. C.S.R. § 162-7-7.2 and W. Va. Code § 5-10-2(12), prevent the Board from denying to Mr. Jones the right to participate in PERS where Mr. Jones' employer erroneously informed him that he was eligible to participate in PERS.

> According to W. Va. C.S.R. § 162-7-7.2 (April 13, 2012),
>
> > [i]n the event the Board determines that an employer error has occurred, the member is entitled to receive retirement system service credit for the prior period of employment in which the employer error occurred, with receipt of service credit being contingent upon the Board's receipt of the employee and employer contributions, plus interest at the rate specified in subdivision 7.2.a. of this rule.

West Virginia Code § 5-10-2(12) (2012), defines "employer error" as

> an omission, misrepresentation, or violation of relevant provisions of the West Virginia Code or of the West Virginia Code of State Regulations or the relevant provisions of both the West Virginia Code and of the West Virginia Code of State Regulations by the participating public employer that has resulted in an underpayment or overpayment of contributions required. A deliberate act contrary to the provisions of this section by a participating public employer does not constitute employer error.

In relying on these provisions, the circuit court reasoned that the Authority's false representation to Mr. Jones regarding his entitlement to participate in PERS constitutes an employer error under W. Va. Code § 5-10-2(12), and this error resulted in an overpayment of contributions by Mr. Jones and the Authority. The court then found that

8

pursuant to W. Va. C.S.R. 162-7-7.2. Mr. Jones is entitled to receive retirement system service credit for the prior period of employment in which Mr. Jones' employer erroneously informed him that he was eligible to participate in PERS. Finally, the circuit court applied this Court's holding in *Hudkins* in combination with its construction of W. Va. C.S.R. § 162-7-7.2 and W. Va. Code § 5-10-2(12), and concluded that the Retirement Board is estopped from denying to Mr. Jones participation in PERS.

On appeal, the Retirement Board asserts that the circuit court's reliance on W. Va. C.S.R. § 162-7-7.2 and W. Va. Code § 5-10-2(12) constitutes error. According to the Board, this administrative rule and statute cannot be used to hold the Board vicariously liable for an employer's false representation regarding PERS eligibility. The Board notes the definition of "employer error" in W. Va. Code § 5-10-2(12) specifically refers to an error by the employer "that has resulted in an underpayment or overpayment of *contributions required*," (emphasis added) and the Board opines that no contributions were required in the instant case because Mr. Jones was not eligible to participate in PERS. In addition, the Board opines that W. Va. C.S.R. § 162-7-7.2 is not relevant to the facts of this case because this rule expressly pertains to interest rates applied to specified PERS member transactions. The Board concludes that the purpose of the statute and legislative rule is to provide a way to correct employer errors which result in overpayment or underpayment of contributions on behalf of PERS members.

9

This Court agrees with the Board that W. Va. C.S.R. § 162-7-7.2 and W. Va. Code § 5-10-2(12) do not apply to the facts of this case and cannot be used as a basis for estopping the Board from denying PERS eligibility to Mr. Jones. As noted by the Board, W. Va. Code § 5-10-2(12) unambiguously defines an employer error as an error "that has resulted in an underpayment or overpayment of contributions required." This code section applies to a PERS member who has underpaid or overpaid contributions as the result of an employer error. It does not apply in instances where a public employer erroneously informs an employee that he or she is eligible to participate in PERS.

In addition, we likewise find that W. Va. C.S.R. § 162-7-7.2 does not apply to the facts of this case. According to W. Va. C.S.R. § 162-7-1.1, which states the scope of Title 162, Series 7, "[t]his Rule addresses and identifies the interest rates which the Consolidated Public Retirement Board shall apply to the referenced member transactions which, from time-to-time, occur in the Board's administration of the State's several retirement systems." A reading of the subject rule indicates that it specifically addresses the interest rates that apply to refunds, reinstatements, retroactive service, loan interest and payments, and employer error affecting PERS members. There simply is nothing in the Rule that indicates that the Retirement Board is bound by an employer error regarding an employee's eligibility to be a member of PERS.

Moreover, we note that the rule applying to requirements for membership in PERS is Title 162, Series 5. Specifically, W. Va. C.S.R. § 162-5-2.3 provides that

10

"[e]mployment of an employee by a participating public employer in a position which normally requires twelve (12) months per year service and requires at least one thousand forty (1,040) hours per year service in that position." There simply is no valid reason to apply W. Va. C.S.R. § 162-7-7.2, regarding interest rates applicable to various PERS member transactions, to the requirements for PERS eligibility found in Title 162, Series 5 or to conclude that an employer error can modify or amend the statutory requirements for PERS eligibility. Therefore, we find that the circuit court's reliance on W. Va. Code § 5-10-12(2) and Rule § 162-7-7.2 to conclude that the Board is estopped from finding Mr. Jones ineligible to be a members of PERS constitutes error.

Having found that C.S.R. § 162-7-7.2 and W. Va. Code § 5-10-2(12) do not apply to the facts of this case to estop the Board from denying participation in PERS to Mr. Jones, we further determine that our holding in *Hudkins* does not apply to the present facts. As noted above, *Hudkins* is distinguished from the instant case in that *Hudkins* involved a false representation made by the Retirement Board whereas the instant case involves a false representation made by an employer. This Court's holding in *Hudkins* is limited to instances where the Retirement Board itself makes a false representation regarding a public employee's eligibility to receive retirement benefits. We deem it neither legally sound nor prudent to expand our holding in *Hudkins* to apply in circumstances regarding a public employer's false representation to an employee that he or she is eligible to participate in PERS.

11

Mr. Jones presents several arguments in support of the circuit court's decision all of which we find unavailing. First, Mr. Jones asserts that in *Hudkins* the employee relied upon the false representation of both her employee and the Board. While it is true that Ms. Hudkins' employer, the DHHR, falsely represented to Ms. Hudkins that she could receive her accumulated sick leave pay upon retirement, it was Ms. Hudkins' reliance on the misrepresentation of the Retirement Board which was the decisive factor in this Court's determination to apply equitable estoppel in that case.

Second, Mr. Jones points to the representations made by the Retirement Board in a letter, sent to him shortly after his employment with the Authority, informing him that since he had returned to the employment of a participating public employer, he was eligible to reinstate with appropriate interest the refund of his previously withdrawn contributions. Mr. Jones also calls this Court's attention to the fact that by the time the Board determined that he was ineligible to be a member of PERS, he had made contributions to the Board for ten years and five months of service, meaning that his retirement benefits had become fully vested. While this Court finds the Board's dilatoriness in discovering Mr. Jones' ineligibility for PERS membership to be inexcusable, it is clear that Mr. Jones did not rely on the Board's representations or conduct in deciding to accept the position with the Authority as he had already accepted the position by the time he received the Board's letter. As a result, Mr. Jones cannot show that the Board should be equitably estopped from denying him eligibility to participate in PERS.

12

## IV. CONCLUSION

For the reasons set forth above, this Court reverses the July 22, 2013, order of the Circuit Court of Raleigh County, and we remand to the circuit court for reinstatement of the West Virginia Consolidated Public Retirement Board's July 6, 2011, final order denying the appeal of Mr. Jones to participate in the Public Employees Retirement System based on his employment with the Raleigh County Emergency Services Authority.

Reversed and remanded.