IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

No. 15-0281

**FILED**

**June 3, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CYNTHIA RINGEL-WILLIAMS,

Petitioner/Petitioner Below

v.

WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,

Respondent/Respondent Below

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster, Judge
Civil Action No. 11-AA-28

AFFIRMED

Submitted:  April 6, 2016
Filed:  June 3, 2016

Andrew J. Katz, Esq.
The Katz Working Families' Law Firm, LC
Charleston, West Virginia
Attorney for Petitioner

J. Jeaneen Legato, Esq.
West Virginia Consolidated Public
 Retirement Board
Charleston, West Virginia
Attorney for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

3. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

WORKMAN, Justice:

This is an appeal from the Circuit Court of Kanawha County's order affirming the West Virginia Consolidated Public Retirement Board's (hereinafter "the Board") decision finding that petitioner was not previously eligible to participate in the Teachers' Retirement System (hereinafter "TRS") because she was not "regularly employed for full-time service" as defined by West Virginia Code § 18-7A-3 (1986). The Board found, and the circuit court agreed, that West Virginia Code § 18-7A-3(11) requires minimal employment for 200 days throughout the employment term to be eligible to participate in the TRS and since petitioner worked only 120 days a year, she was not eligible.

Based upon our review of the briefs, legal authorities, appendix record, and upon consideration of arguments of counsel, we agree with the circuit court's conclusion that petitioner was not statutorily eligible to participate in the TRS and therefore affirm the circuit court's February 27, 2015, order.

## I.     FACTS AND PROCEDURAL HISTORY

Petitioner has been employed by the Raleigh County Board of Education (hereinafter "Raleigh County BOE") as a physical therapist since 1987. At the inception of her employment, she signed a "Teacher's Probationary Contract of Employment," which provided that she would be paid an annual salary "for an annual employment term of 120 days," which equated to three days a week during the school calendar year. In

1

1989, petitioner executed a "Teacher's Continuing Contract of Employment," which likewise provided that she was to be employed "for an employment term of 120 days."

When petitioner executed her probationary contract, she also executed a "Membership Enrollment" form provided by the Raleigh County BOE requesting to be enrolled in the TRS.[1] Petitioner testified that health care and retirement benefits were part of her rationale for accepting employment with the Raleigh County BOE. Contributions on petitioner's behalf were made to the TRS continuously from 1987 through 1991, at which time she elected to enroll in the newly-created Teachers' Defined Contribution System ("TDC")[2] and "freeze" her TRS contributions. In 1999, she elected to transfer her TRS funds and service credit into the TDC. In 2008, petitioner chose to transfer back to the TRS.[3] In the process of auditing the transferring members, the Board ascertained that petitioner was ineligible to participate in either plan because she was

---

[1] The TRS, as governed by West Virginia Code § 18-7A-1 (1941) *et seq.*, is a "defined benefit" plan, that is, it identifies the specific benefit that will be payable upon retirement.

[2] The TDC, as governed by West Virginia Code § 18-7B-1 (1990) *et seq.* is a "defined contribution" plan, that is, the amount contributed is set and invested into mutual funds; as a result, the payout at retirement fluctuates depending on how the investments have performed.

[3] Due to the performance of TDC, the Legislature attempted to merge the TRS and TDC; upon objection of the members, the Legislature permitted employees to elect in which plan they would participate as set forth in West Virginia Code § 18-7D-1 (2008) *et seq.*

only working 120 days a year. The Board sent petitioner a letter advising that the money contributed would be returned to her and her employer.[4]

Petitioner appealed the Board's determination and a hearing before a hearing examiner ensued. Petitioner testified that throughout her enrollment in the various retirement systems, she received statements which reflected that she was annually receiving approximately 60% of a full year credit, the equivalent of her three-day/week, 120-day employment term. In 2002, petitioner received a "participant data" form summarizing the member's participation and requesting any corrections. The letter with the form stated: "Keep in mind that to receive one full year of service credit in the TDC System you must work and be paid for at least 200 days, anything less credits you with a fractional part of the year." Petitioner testified that she understood this to mean that those working less than 200 days were not ineligible, but rather, would merely receive fractional service credit for the year.

Terasa Miller, Deputy Director and Chief Operating Officer of the Board, testified that it has always been the Board's position that the West Virginia Code makes retirement available only to full-time employees who work a 200-day contract year. She confirmed that annual reports received by the Board in fact reflected that petitioner was working only 120 days. However, Deputy Miller testified further that there was nothing

[4] The Board represented that approximately 100 other TRS members were likewise found to be erroneously enrolled in the system. The Board provides no information regarding the particular working arrangements of these members.

3

systematically in place to alert the Board to members who worked fewer than 200 days in any particular year as mid-year hires are commonplace, which would result in fewer than 200 days reported. Deputy Miller testified that the error in enrollment was that of petitioner's employer, the Raleigh County BOE, and that no one at the Board made any assurances of eligibility to petitioner.

The hearing examiner determined that the definitions contained in West Virginia Code § 18-7A-3 require a 200-day contract before one may participate in the TRS.[5] Specifically, he found that, to be eligible, a "nonteaching member" must be "regularly employed for full-time service" per West Virginia Code § 18-7A-3(18), which is collectively defined by West Virginia Code §§ 18-7A-3(11) and -3(27) as requiring twenty employment days per month, for at least ten months. However, despite the Board's position that petitioner was ineligible to participate in either plan, the hearing examiner found that there was no such 200-day requirement to participate in the TDC due to the absence of a statutory definition for "employment term" in West Virginia Code §

---

[5] The operative definitions contained in the 1986 version of West Virginia Code § 18-7A-3 applicable to petitioner's case were not then enumerated. The hearing examiner and the parties, however, reference the definitions as enumerated in the current version of the statute. The substance of the definitions has not been altered from the 1986 version. Therefore, for the sake of consistency and clarity, we will reference the current enumeration as well.

4

18-7B-2. [6]   Therefore, the hearing examiner found that petitioner was eligible to participate in the TDC. [7]   The Board adopted the hearing examiner's recommended decision and the circuit court affirmed the decision on appeal utilizing the same rationale. The circuit court further found that the Board was not equitably estopped from precluding petitioner's participation in the TRS.  This appeal followed.

## II.    STANDARD OF REVIEW

Syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) provides:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

More specifically, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syl. Pt. 1, *Appalachian Power Co. v.*

---

[6] In 2013, the Legislature amended West Virginia Code § 18-7B-2 to include a definition for "employment term" which is essentially identical to that contained in West Virginia Code § 18-7A-3(11).

[7] Accordingly, only petitioner's service credit and accrued earnings while enrolled in TRS are at issue, consisting of years 1987-1992 and 2008-2010; the Board maintains that this constitutes a total of 4.879 years of service credit.  At or around the time of the administrative hearing, petitioner switched to a five-day, full-time work week and is now participating in TRS with approximately thirteen years of service credit.

5

*State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995). With this standard as guidance, we proceed to the parties' arguments.

## III.    DISCUSSION

This case requires the Court to determine whether the definitions contained in West Virginia Code § 18-7A-3 yield the interpretation that a non-teaching employee must work 200 days to be eligible to participate in the TRS, the defined-benefit retirement plan. If there is such a requirement, the Court must then determine whether the Board is equitably estopped from disallowing petitioner's accrued participation and earnings while erroneously enrolled in the plan.

*Statutory Interpretation*

West Virginia Code § 18-7A-1 *et seq.* permits participation in the retirement plan by "non-teaching members." There are three operative definitions contained in West Virginia Code § 18-7A-3 relevant to the issue presented.[8] A "non-teaching member" is defined as "any person . . . who is *regularly employed for full-time service* by . . . [a]ny county board of education[.]" W. Va. Code § 18-7A-3(18) (emphasis added). "Regularly employed for full-time service" is defined as being employed "in a regular position or job *throughout the employment term* regardless of the number of hours worked or the method of pay." W. Va. Code § 18-7A-3(27) (emphasis

_____
[8] This Section has been amended several times since petitioner's enrollment, however, none of these amendments have affected the substance of these definitions.

added). An "employment term" is defined as employment "for at least ten months, *a month being defined as twenty employment days*." W. Va. Code § 18-7A-3(11) (emphasis added). "Employment days" are not defined in the statute.[9] The hearing examiner, Board, and circuit court read these statutory definitions, *in pari materia*, as defining an eligible non-teaching member as one who is employed in a regular position for 200 days during the school calendar year.

Petitioner argues that these definitions are ambiguous and suggest that the Legislature simply intended that one work regularly "*throughout* the employment term" without regard to the total number of days or hours worked. In particular, petitioner urges that reading the definitions to require 200 days of service for retirement eligibility potentially yields an absurd result given the inclusion of the phrase "regardless of the number of hours worked" in the language of West Virginia Code § 18-7A-3(27). Petitioner argues that requiring 200 days of work attendance, but without regard to hours worked, would essentially permit a person to work *half-* or *partial* days, five days a week, twenty days a month for 200 days (for a cumulative 100 days of work) and be eligible for retirement, whereas one who works *all* day only three days a week (for a cumulative 120 days of work) is not eligible. As such, petitioner argues that the "absurd results" doctrine

---

[9] However, "employment day" is defined in the regulations governing the TDC. Code of State Regulations § 162-3-3.1.f provides that "employment day" means "a day a member is paid compensation for full-time service by a participating employer."

of statutory construction mandates a contrary interpretation.[10]  Finally, petitioner explains the ten-month/twenty-day language of West Virginia Code § 18-7A-3(11) as the Legislature "simply defining the duration of the 'employment term' as ten months of 20-day months," rather than ten, full calendar months.

---

[10] Petitioner correctly notes that this Court has acknowledged its duty "to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *State v. Kerns*, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990).  However, we have likewise observed:

> This does not mean, however, that we are at liberty to substitute our policy judgments for those of the Legislature whenever we deem a particular statute unwise. As one commentator has astutely observed,
>
> > the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said.
>
> 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:07, at 199 (6th ed. 2000) (footnote omitted). The absurd results doctrine merely permits a court to favor an otherwise reasonable construction of the statutory text over a more literal interpretation where the latter would produce a result demonstrably at odds with *any conceivable legislative purpose.*

*Taylor-Hurley v. Mingo Cty. Bd. of Educ.*, 209 W.Va. 780, 787-88, 551 S.E.2d 702, 709-10 (2001) (emphasis added).

In response, the Board counters that, quite simply, one must have what is commonly known as a 200-day contract to participate in the TRS.[11] The Board argues that the statute is unambiguous and therefore is not susceptible to our canons of statutory construction.[12]

This Court recently considered a highly analogous factual scenario, although dealing with the Public Employees Retirement System (hereinafter "PERS") statute instead of the TRS statute. In *Curry v. West Virginia Consolidated Public Retirement Board*, 236 W. Va. 188, 778 S.E.2d 637 (2015), petitioner claimed to be a regular, full-time employee because he provided services in each month throughout the calendar year, although his aggregate hourly service was a mere fraction of the 1,040 hours typically considered full-time. *Id*. at ___, 778 S.E.2d at 642. This Court rejected petitioner's position that this entitled him to participation in PERS, reasoning that such an argument would render someone who worked only an hour a month, each month, eligible to participate: "This outcome would be patently contrary to W. Va. Code § 5-10-2(11),

_____

[11] The Board appears to have relented on its position that this requirement exists in both the TRS *and* the TDC; at a minimum, this issue is not on appeal.

[12] The Board does not persuasively counter petitioner's contention that allowing participation by someone who works only partial days on a daily basis yields an absurd result. Instead, the Board simply notes that outcome "does not change the clear mandates of the statute." We note, however, that petitioner has provided no evidence that any such individuals—regularly employed, *full-time* employees, who work a minimum of 200 days, but *less* than a customary seven-and-a-half/eight hour workday—are currently enrolled in and lawfully eligible to receive retirement under the TRS.

which sets forth the criteria for eligibility to participate in PERS, namely, employees who provide *regular full-time service* to this State." *Id*. (emphasis added). The Court further dismissed petitioner's argument because it "disregards the specific definition of the term 'month,' as provided [by statute]," observing that the PERS statute expressly provides that an individual must work a minimum of ten days in any calendar month to receive a month of service credit.[13] *Id.*

Although the TRS definitions are not as explicit as those contained in the PERS statute at issue in *Curry*, we decline to find that they create ambiguity about petitioner's eligibility for retirement. With regard to statutory interpretation, this Court has stated: "To ascertain the Legislature's intent, '[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.'" *Hammons v. W. Va. Office of Ins. Comm'r*, 235 W. Va. 577, 584, 775 S.E.2d 458, 465 (2015) (quoting *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995)). As is well-established, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

---

[13] West Virginia Code § 5-10-14(a)(1) (2013) provides: "In no event may less than ten days of service rendered by a member in any calendar month be credited as a month of service[.]"

Carefully tracking the operative definitions to create an encompassing rule, it is clear that the ultimate definition of "employment term" prescribes a minimal frequency and regularity of employment service to be eligible to participate in the TRS, *i.e.*, at least ten months, twenty employment days constituting a "month," for a total of 200 employment days. Petitioner's suggestion that the twenty day/ten month language merely outlines the parameters of the employment term is belied by the use of the phrase "at least" in the definition: "'Employment term' means employment for *at least* ten months, a month being defined as twenty employment days." W. Va. Code § 18-7A-3(11) (emphasis added). The use of "at least" plainly denotes a minimal prerequisite, and would be unnecessary surplusage if the intent of this language were merely to describe the parameters of a typical school year. In that regard, even if this Court were to deem the statute ambiguous, petitioner's interpretation would run afoul of this cardinal rule of statutory interpretation: "In parsing the language of a statute for its meaning, we are mindful that 'a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.'" *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 214, 530 S.E.2d 676, 687 (1999) (quoting *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 147, 107 S.E.2d 353, 359 (1959)). To embrace petitioner's interpretation would render the term "at least" superfluous.

Although petitioner argues that inclusion of "regardless of the number of hours worked" in the definition of "regularly employed for full-time service" suggests

11

that quantity of service is irrelevant, such a reading would be as nonsensical as that rejected in *Curry*. Not coincidentally, the school year is traditionally considered to be comprised of 200 days—180 instructional and twenty non-instructional days. *See* C.S.R. § 126-73-6.1.a (requiring the school calendar to allow for an "employment term of at least 200 days . . . for all regular, full-time employees") and § 126-73-6.1.c ("The minimum employment term shall consist of no less than 180 separate days of instruction, and 20 noninstructional days . . ."). It would seem simply that the Legislature determined that hours should not be parsed, but that daily, full-time service throughout the school year is a prerequisite. Irrespective of which days or how long during a day petitioner works, her old schedule of three days a week simply would not allow her to reach 200 days of service in a school calendar year.[14] Accordingly, we agree with the Board and circuit court's conclusion that petitioner was not previously statutorily eligible to participate in the TRS.

*Equitable Estoppel*

Petitioner next argues that if the Court finds the statute requires 200 days of service for eligibility in the TRS, the Board is equitably estopped from depriving her of

---

[14] Moreover, petitioner fails to properly venerate the significance of the term "full-time," as used throughout the statute. While this term is not specifically defined, it is replete throughout the statutory scheme. Petitioner maintains focus on the regularity and scheduling of her service, rather than the simple quantity. However, in absence of a definition to the contrary, being considered "full-time" would appear to foreclose anything less than a level of daily service throughout the entirety of the school year sufficient to be deemed a "full-time" employee.

her accrued earnings and service credit. Petitioner argues strenuously that the Board was on notice that she was only a 120-day employee, yet continued to report her—via contribution statements—as a participating member in the TRS. Petitioner argues that she took the position to obtain retirement and had she known she was ineligible, she would have either found another job or changed her work arrangements to work a five-day work week. The Board counters that it had no actual knowledge that petitioner was improperly enrolled until the 2008 audit and that reporting of fewer than 200 hours was commonplace when teachers were hired mid-year; therefore, there would be nothing suspect about an employee who showed only a partial year's service credit. More importantly, the Board argues that it did not misrepresent petitioner's eligibility to her and it cannot confer eligibility in absence of statutory authority permitting it to do so.

Once again, the Board clearly has the weight of authority in its favor. This Court has made plain that, while equitable estoppel may apply to the State, it applies only where the State makes a misrepresentation upon which an individual detrimentally relies. In *West Virginia Consolidated Public Retirement Board v. Jones*, 233 W. Va. 681, 686, 760 S.E.2d 495, 500 (2014), this Court held that estoppel "does not apply in instances where a public employer erroneously informs an employee that he or she is eligible to participate in PERS." In *Jones*, the Court contrasted *Hudkins v. Public Retirement Board*, 220 W. Va. 275, 647 S.E.2d 711 (2007) where a Retirement Board employee made a false representation giving rise to equitable estoppel, with cases like *Jones*, where the employer makes the error. *Id.* at 687, 760 S.E.2d at 501. The Court found it "neither

13

legally sound nor prudent to expand our holding in *Hudkins*" to apply where the employer misrepresents eligibility. *Id.* In this case, it is undisputed that no Retirement Board employee verified petitioner's eligibility; rather, her employer's payroll clerk mistakenly enrolled her and/or permitted her to enroll. We reject petitioner's argument that the automated issuance of statements showing a record of contributions and earnings is tantamount to the Board essentially "vouching" for eligibility.

While we are necessarily sympathetic to petitioner's situation and monetary losses, this Court is simply not at liberty to confer statutory eligibility where none exists. *See In re Cain*, 197 W. Va. 514, 518 n.9, 476 S.E.2d 185, 189 n.9 (1996) ("[T]his Court may not confer retirement benefits for employment where the legislature has not so authorized."). However, we would be remiss if we did not express our continued dismay, much as we did in *Jones*,[15] at the lack of a systemic failsafe on the part of the Board to mitigate against any such occurrences. While we recognize the expediencies of administering the retirement fund consisting of approximately 68,000 members with limited staffing, it would appear wise for the Board to weigh the efforts and expense of defending against claims such as petitioner's, along with the potential monetary losses to such individuals, with any associated cost or effort to create a system which would serve to more promptly and effectively identify improper enrollment.

---

[15] In *Jones*, the Court noted that it found "the Board's dilatoriness in discovering Mr. Jones' ineligibility for PERS membership to be inexcusable[.]" 233 W. Va. at 687, 760 S.E.2d at 501.

14

## IV. CONCLUSION

For the reasons stated herein, we therefore affirm the circuit court's February 27, 2015, order.

Affirmed.

15