**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 20-1793**

———————————

JANET GRAHAM, Administratrix of the Estate; EDNA MARIE MCNEELY,

        Plaintiffs – Appellants,

      v.

SUNIL KUMAR DHAR, M.D.; BLUEFIELD CLINIC COMPANY, LLC, d/b/a
Bluefield Cardiology; BLUEFIELD HOSPITAL COMPANY, LLC, d/b/a Bluefield
Regional Medical Center,

        Defendants – Appellees.

———————————

Appeal from the United States District Court for the Southern District of West Virginia, at
Bluefield.  David A. Faber, Senior District Judge.  (1:18-cv-00274)

———————————

Argued:  September 24, 2021                    Decided:  May 2, 2022

———————————

Before KING and RUSHING, Circuit Judges, and John A. GIBNEY, Jr., Senior United
States District Judge for the Eastern District of Virginia, sitting by designation.

———————————

Vacated and remanded by published opinion.  Judge Rushing wrote the opinion, in which
Judge King and Senior Judge Gibney joined.

———————————

**ARGUED:**  Andrew David Byrd, WARNER LAW OFFICES, PLLC, Charleston, West
Virginia, for Appellant.  W.E. Sam Fox, II, FLAHERTY SENSABAUGH BONASSO
PLLC, Charleston, West Virginia, for Appellees.  **ON BRIEF:**  Eric J. Buckner, KATZ
KANTOR STONESTREET & BUCKNER, PLLC, Princeton, West Virginia, for
Appellant.  Megan F. Bosak, Jason L. Holliday, FLAHERTY SENSABAUGH BONASSO
PLLC, Charleston, West Virginia, for Appellees.

RUSHING, Circuit Judge:

This appeal concerns the "loss of chance" provision of West Virginia's Medical Professional Liability Act (MPLA). The district court interpreted that provision as requiring a plaintiff to prove that the defendant's negligence caused a greater than 25 percent "change in outcome" between the patient's chance of survival had the standard of care been followed and her chance of survival due to the defendant's negligence. We disagree. The text of the law requires simply that a plaintiff prove "that following the accepted standard of care would have resulted in" a greater than 25 percent chance of survival. W. Va. Code § 55-7B-3(b). Separately, a plaintiff must also prove that the defendant's failure to follow the standard of care "increased the risk of harm to the patient," which was "a substantial factor in bringing about the ultimate injury." *Id.* We accordingly vacate the district court's decisions and remand for further proceedings.

I.

On March 10, 2016, Edna McNeely was admitted to Bluefield Regional Medical Center (BRMC) to undergo an index diagnostic cardiac catheterization.[1] After the procedure, McNeely developed a retroperitoneal bleed. As her condition deteriorated, the decision was made to transfer McNeely to Carilion Roanoke Memorial Hospital for cardiothoracic surgery, which was not available at BRMC. Medical records exchanged during discovery reveal that the decision to transfer McNeely was made at 9:35 p.m. on

---

[1] The complaint names as defendants Bluefield Regional Hospital, LLC, d/b/a Bluefield Regional Medical Center; Bluefield Clinic Company, LLC, d/b/a Bluefield Cardiology; and Sunil Kumar Dhar, M.D. The decisions on appeal concern only BRMC, so we focus on the allegations regarding that defendant.

2

March 11. But McNeely did not arrive at Carilion Roanoke until 12:53 a.m. on March 12. She died the next day from septic shock due to the retroperitoneal bleed.

Plaintiff Janet Graham, administratrix of McNeely's estate, sued, alleging that BRMC breached its duty of care by failing to timely transfer McNeely to Carilion Roanoke. According to Graham, facilities like BRMC that do not perform on-site cardiothoracic surgery are required to expeditiously transfer coronary intervention patients pursuant to established, written protocols. Graham's liability expert, Dr. Scott J. Denardo, opined that the standard of care applicable in this case was a transfer time of one hour in accordance with the West Virginia Cardiac Catheterization Standards. At his deposition, Dr. Denardo also opined that at 9:30 p.m. on March 11—five minutes before the decision was made to transfer McNeely to Carilion Roanoke—McNeely's "chance of survival was at least 50 percent or more had she been transferred right at that point." He then explained, "I think about every hour, her chance of survival decreased by about 10 percent. So at 10:30, it was more like 40 percent, at 11:30, 30 percent. And that's just a rough estimate." J.A. 117–118.

BRMC moved for summary judgment, contending that Graham had failed to adduce evidence that BRMC's alleged breach of the standard of care was a proximate cause of McNeely's death, as required by the MPLA. Graham responded that Dr. Denardo's deposition testimony created a genuine issue of material fact with respect to causation under a "loss of chance" theory. According to Graham, Dr. Denardo's testimony supported a finding that, if BRMC had transferred McNeely to Carilion Roanoke by 10:35 p.m. in accordance with the standard of care, she would have had an almost 40 percent chance of

3

survival.  Graham posited that this "greater than twenty-five percent chance" of survival was sufficient to prove causation under the MPLA's "loss of chance" provision.  W. Va. Code § 55-7B-3(b).

The district court granted summary judgment in favor of BRMC.  *See Graham v. Dhar*, No. 1:18-00274, 2019 WL 7041282, at *1 (S.D. W. Va. Dec. 19, 2019).  The court consulted West Virginia Code § 55-7B-3(b), which requires a medical malpractice plaintiff proceeding on a "loss of chance" theory to prove that the defendant's failure to follow the standard of care "increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury" and to "also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient . . . would have survived."  The district court interpreted this provision "as requiring a 25% *change in outcome* between the chance of survival had the standard of care been followed and the chance of survival experienced due to the breach of the standard of care."  *Graham*, 2019 WL 7041282, at *5 n.10.  Accepting Dr. Denardo's opinions for purposes of summary judgment, the court calculated McNeely's chances of survival as 49.17 percent at 9:35 p.m., when the decision was made to transfer her to Carilion Roanoke; 39.17 percent at 10:35 p.m., when she would have arrived at Carilion Roanoke had BRMC followed the one-hour standard for patient transfer; and 16.17 percent at 12:53 a.m., when she actually arrived at Carilion Roanoke.  *Id.* at *4 & nn.5–7.  The court reasoned that "the difference between the chance of survival at the time that Mrs. McNeely would have arrived had no negligence occurred (39.17%) versus the chance of survival at the time that she actually arrived (16.17%)" was 23 percentage

4

points—"below the 25% threshold required by law to state a claim under the § 55-7B-3(b) 'loss of chance' theory." *Id.* at *4–5. Because Graham could show only a "23%" "change in outcome" for McNeely's chances of survival, the court concluded that she had failed to prove an essential element of her case and summary judgment was warranted. *Id.* at *5 & n.10 (emphasis removed).

Graham sought reconsideration, which the district court denied. The court reasoned that Graham's "argument that the statute should be interpreted as making a 25% chance of survival an absolute threshold" was inconsistent with the statute's requirement that "a defendant's negligence [be] a 'substantial factor' that 'increased the risk of harm.'" *Graham v. Dhar*, No. 1:18-00274, 2020 WL 8184338, at *2 (S.D. W. Va. June 25, 2020) (quoting W. Va. Code § 55-7B-3(b)). The court observed that, under Graham's theory, "if a patient would have had a 25.01% chance of survival, but due to a defendant's negligence the patient's chance of survival drops to 24.99%, then a plaintiff has met its burden of proof" because following the standard of care would have resulted in a greater than 25 percent chance of survival. *Id.* The court rejected this interpretation as producing "an irrational result," *Graham*, 2019 WL 7041282, at *5 n.10, since such a small change "cannot plausibly be considered substantial," *Graham*, 2020 WL 8184338, at *3.

The district court subsequently directed the entry of final judgment as to BRMC on its summary judgment and reconsideration rulings, *see* Fed. R. Civ. P. 54(b), and we now have jurisdiction over Graham's appeal, *see* 28 U.S.C. § 1291. The sole question before us is whether the district court erred in interpreting the MPLA's "loss of chance" provision to foreclose a finding of liability against BRMC. We review this question of statutory

5

interpretation de novo. *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 250 (4th Cir. 2013).

## II.

"[T]he highest court of the [S]tate is the final arbiter of what is state law." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). But West Virginia's Supreme Court of Appeals has not interpreted the "loss of chance" provision of West Virginia's MPLA.[2] We therefore must apply principles of statutory interpretation to determine how West Virginia's highest court would answer the question before us. "If the text [of a statute], given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 466 S.E.2d 424, 438 (W. Va. 1995). The text must be "considered in its proper context and as it relates to the subject matter dealt with." *In re Estate of Lewis*, 614 S.E.2d 695, 700 (W. Va. 2005) (internal quotation marks omitted). "[E]very section, clause, word or part of the statute" must, if possible, be given "significance and effect," so that no term is rendered "superfluous." *Ringel-Williams v. W. Va. Consol. Pub. Ret. Bd.*, 790 S.E.2d 806, 811 (W. Va. 2016).

## A.

We begin with the statutory text. It reads:

> If the plaintiff proceeds on the "loss of chance" theory, *i.e.*, that the health care provider's failure to follow the accepted standard of care deprived the

---

[2] We take judicial notice of the fact that West Virginia recently created an Intermediate Court of Appeals, but it has not yet begun hearing cases and so also provides us no guidance. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) (explaining that a federal court should "seek guidance from an intermediate state court" if the decisions of the State's highest court "prove[] unenlightening" upon the question before it).

patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

W. Va. Code § 55-7B-3(b).

The grammar and syntax of this provision reveal that it requires two distinct evidentiary showings.  The plaintiff must prove the elements within the explanatory clause following the "*i.e.*"—that the defendant's failure to follow the standard of care "deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury."  And the plaintiff "must also prove" that following the standard of care "would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived."  The first clause codifies the Supreme Court of Appeals' adoption of the "value of a chance" theory of medical malpractice. *Thornton v. Charleston Area Med. Ctr.*, 305 S.E.2d 316, 324–325 (W. Va. 1983).  The second clause sets an additional bar that a plaintiff proceeding on this theory must cross:  She must show that the patient had a "greater than twenty-five percent chance" of survival (or improved recovery) if the defendant had followed the standard of care.  This additional requirement forecloses liability for patients who were unlikely to survive or recover even if the defendant had done everything right.

Nowhere does the statute require a plaintiff to prove that the malpractice caused a greater than 25 percent change in outcome.  The district court erroneously formulated such

7

a requirement by merging the "substantial factor" element with the "greater than 25 percent chance" element. That reading fails to accord significance to "every" "word or part" of the statute, *Ringel-Williams*, 790 S.E.2d at 811, both by collapsing distinct elements and by discounting the adverb "also" as used in the provision. The district court believed its construction was necessary to avoid the "irrational result" of allowing liability when "the chance of survival without breach was 25.01% and the chance of survival due to negligence was 24.99%," *Graham*, 2019 WL 7041282, at *5 n.10, a difference that "cannot plausibly be considered substantial," *Graham*, 2020 WL 8184338, at *3. But there is no inconsistency or irrational result if one reads the statute's two distinct requirements as written. Proving that the patient had a greater than 25 percent chance of survival if the defendant had followed the standard of care is necessary but not sufficient to impose liability. The plaintiff must *also* prove that the defendant's failure to follow the standard of care deprived the patient of a chance of recovery or increased the risk of harm, which was "a substantial factor in bringing about the ultimate injury." W. Va. Code § 55-7B-3(b). The statute requires a plaintiff to establish both.

For example, accepting for purpose of appeal the district court's calculations of McNeely's declining chances of survival, if BRMC had complied with the one-hour transfer time to which Dr. Denardo opined, McNeely would have had a 39.17 percent chance of survival when she arrived at Carilion Roanoke. Her chances would have been "greater than 25 percent," so, accepting Graham's evidence, this element would be satisfied. But to hold BRMC liable for a loss of chance, Graham must also prove that

8

BRMC's failure to timely transfer McNeely deprived her of a chance of recovery or increased the risk of harm, which was a "substantial factor in bringing about" her death.

## B.

Because the meaning of the MPLA's "loss of chance" provision is "readily apparent . . . from the statute's text," our interpretive inquiry is at an end. *Appalachian Power*, 466 S.E.2d at 438. We pause to remark, however, that none of the cases on which the district court relied—three unpublished decisions from federal district courts—counsels a different result.

The court in *Bunner v. United States* appropriately focused on whether the plaintiff had shown "that he would have had 'a greater than twenty-five percent chance' of a better outcome if [the doctor] had taken his complaints seriously." No. 6:13-cv-20655, 2016 WL 1261151, at *11 (S.D. W. Va. Mar. 30, 2016) (quoting W. Va. Code § 55-7B-3(b)). After surveying the evidence, the court concluded that the plaintiff had proven that, but for the doctor's negligence in treating his mouth cancer, "he would have had an appreciably better outcome," and *also* that the doctor's negligence "deprived him of a [greater than 25 percent] chance of an improved outcome, namely, less extensive surgery." *Id.* at *12. The better outcome in *Bunner* was, in the words of the MPLA, "an improved recovery." It was not, as the district court here seemed to believe, a 25 percent *better chance* of recovery. *See Graham*, 2020 WL 8184338, at *3 n.1; *Graham*, 2019 WL 7041282, at *5 n.10.

Nor does *Wilkinson v. United States*, No. 15-16291, 2017 WL 1197823 (S.D. W. Va. Mar. 30, 2017), support the district court's statutory construction. The plaintiff's expert in that case opined that the plaintiff "suffer[ed] a reduction of life expectancy of at

9

least 30-35% as a consequence of his cancer not being treated [earlier]." *Id.* at *3. The only question before the court was whether this opinion contradicted another opinion offered by the expert, and the court concluded it did not. *Id.* Nowhere did the court interpret the statutory standard.

Finally, the district court cited *Davis v. United States*, No. 5:10-cv-00384, 2012 WL 2681426 (S.D. W. Va. July 6, 2012), in support of merging the statute's "greater than 25 percent chance" element with its "substantial factor" element. According to the *Davis* court, the "greater than 25 percent chance" element sets "a statistical minimum standard of proof" for "the substantial factor concept." *Id.* at *8. It is perhaps possible to conceive of the "greater than 25 percent chance" element this way; the legislature could have made the judgment that, if a patient had a *less* than 25 percent chance of survival even if the doctor had done everything right, then the doctor's negligence could not have been a *substantial* factor in bringing about the patient's death, as compared to other factors. But even this gloss does not require collapsing the two distinct elements. A plaintiff does not prove liability simply by clearing the "statistical minimum" of showing that the patient had a greater than 25 percent chance of survival had the standard of care been followed. The plaintiff must also prove that the defendant's negligence increased the risk of harm to the patient, which was a substantial factor in bringing about the ultimate injury. In any event, this passing, unsupported statement played no role in the resolution of the *Davis* case, which turned on flaws in the plaintiff's theory of causation, not on any "loss of chance" evidence. *See id.* at *9–13.

10

III.

We conclude that a plaintiff proceeding under West Virginia's "loss of chance" theory of medical malpractice must establish, "to a reasonable degree of medical probability," that if the standard of care had been followed, the patient would have had a greater than 25 percent chance of survival or improved recovery.  W. Va. Code § 55-7B-3(b).  A plaintiff does not need to prove that failure to follow the standard of care caused a greater than 25 percent change in the patient's prognosis.  But, as the law states, a plaintiff must also prove that the negligent care "deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient."  *Id.*  Because the district court applied the wrong standard, we vacate its decisions awarding summary judgment to BRMC and denying Graham's motion to reconsider.  We remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*